Reversed.

## In re CLARKE.
### Patent Appeal No. 3180.

Court of Customs and Patent Appeals.
Feb. 26, 1934.

Hugh K. Wagner and Gladys Walton, both of St. Louis, Mo. (Eugene E. Stevens, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 18, 22, 23, 24, 27, 28, 29, and 31 to 38, inclusive, in appellant's application for a patent for an alleged invention relating to improvements in balls for use in the playing of games, and "particularly to a novel means of securing together the opposing edges of a seam in the cover that surrounds the core of a ball."

Claims 18, 22, 35, 36, and 37 are, we think, illustrative. They read:

"18. A prepared blank of covering material for a ball having an edge portion adapted to be folded over, the line of the *fold being provided with a series of perfora-* tions preformed for receiving a lace, and the free edge of said edge portion being nicked in staggered relation to said perforations to prevent buckling in folding the edge portion over the body of the blank."

"22. A ball comprising a core, a cover having a seam, and lacing uniting the opposing edges of the seam, said lacing being anchored in the core and wholly inclosed by said cover."

"35. The method of making a cover for a ball which consists in blanking out the component sections of the cover, forming a series of perforations in each of the sections in juxtaposition to the entire marginal edge thereof, folding the marginal portion of the section back against its inner face on the line of perforations, and uniting the contiguous edges of the sections by threading lacing through the said perforations.

"36. The method of making a cover for a ball which consists in blanking out the component sections of the cover, forming a series of perforations in each of the sections in juxtaposition to the entire marginal edge thereof, folding the marginal portion of the section back against its inner face on the line of perforations, securing the folded portion by stitching to form a hem, and threading lacing through the contiguous hems and their perforations in alternation to unite the sections of the cover.

"37. The method of making a cover for a ball which consists in blanking out the component sections of the cover, forming a series of perforations in each of the sections in juxtaposition to the entire marginal edge thereof and nicking the marginal edge, folding the marginal portion of the section back against its inner face on the line of perforations, and threading lacing through the perforations of contiguous edges in alternation to join the sections."

The references are: Melot, 289,297, November 27, 1883; Pope (British), 20,724, filed 1910, accepted 1911; Martin (British), 183,064, July 20, 1922; Fox, 1,513,753, November 4, 1924.

The patent to Melot relates to improvements in covers for balls, particularly baseballs, and discloses the usual covering, comprising two complemental pieces, shaped in the figure-of-eight design. The two pieces are fastened together by a stitching which is below the exterior surface. The patentee stated that the two patterns or pieces were fitted together around the core and "sewed together from inside until the pieces are about half-way fastened together. * * * The ball is then inserted and the stitching is continued from the outside with a curved needle, care being taken not to draw the stitches until all the stitches are taken. The stitches are then gone over and successively drawn up tight with a hook or awl and the ends of the thread tied and buried in the joint beneath the surface. The seam may be afterward filled with glue or cement, to prevent shrinkage or opening of the same." He further stated that the stitches were taken in the tough flesh side of the leather, and did not extend through the entire thickness of the cover.

The patent to Pope relates to footballs, and discloses an outer cover or case having an opening sufficiently large to permit the insertion of a bladder having a tube. With reference to the closing of the opening in the case, after the bladder has been inserted, the patentee stated:

"One side of the opening in the case is formed into loops * * * which are passed through corresponding holes * * * on the other side of the opening, a lace being then run straight through the loops. * * *

"In a variation loops may be formed on both edges 'hit & miss' * * * & a lace

* * * passed straight through, the fastening then being invisible externally, & the opening showing as a slit only. * * * The end of the lace is brought through the case, & a knot tied which rests on a small piece of leather attached to the interior of the case. * * *"

The patent to Martin relates to footballs, and other playing balls, having a cover made up of a number of separate sections stitched together. The patentee stated: " * * * In order to render the seams more flexible when the ball is in play and thereby increases its resiliency, the blocked-up edges * * * of the panels * * * may be serrated, as shown; or they may be slit inwards preferably to form a fringe. Where the blocked-up edges of the panels are serrated or slit in this manner, the main surface of the panel may be flat, although, if desired, it may be blocked to a part-spherical shape."

The patent to Fox relates to a process for making "play-ground balls of the baseball type." The method is substantially as follows: The usual complemental sections of the figure-of-eight design, one having a longitudinal slit for the insertion of a core, are stitched together. The article is then turned right side out, thus concealing the bulky seams made by the stitching, the core inserted, and the slit closed by exposed stitches.

As explained in the quoted claims, appellant's cover comprises complemental segments or sections of the figure-of-eight design, having a series of perforations adjacent the edges. The edges are folded back along the line of perforations, nicked in staggered relation to the perforations, and sewed to the body of the segments. The two segments or sections, which form the cover, are fastened about the core by means of a lacing which is first anchored to the core and then passed alternately through the perforations in the contiguous edges of the segments. The lacing is concealed beneath, and protected by, the cover.

All of the claims in appellant's application were rejected by the Primary Examiner on the references cited.

On appeal, the Board of Appeals allowed claims 25, 26, 30, and 39.

Claim 26 is illustrative of the allowed claims. It reads: "26. In a ball, a core, a cover comprising complemental segments having contiguous marginal edges folded back against their undersides so as to fit snugly against said core, each of said edges being provided throughout its length with a series of performations on the line of the fold, *the lobes of connective material between the perforations fitting into the perforations in the contiguous edge of the adjacent segment,* and lacing passing through the perforations of contiguous edges in alternation." (Italics ours.)

In its decision, the Board of Appeals, after stating that it was old to provide concealed seams for baseball covers, and that the patent to Pope disclosed a seam somewhat similar to that employed by appellant, said: "It is the examiner's position that it would not involve invention to substitute the seam of Pope for the seam of Fox or Melot. *The seam disclosed in Pope is not very clearly described but apparently instead of perforations near the edges of the sections projecting tongues are provided and these are folded over upon themselves to provide loops through which the thread may pass.* It is believed that appellant's structure has certain advantages in a baseball over the seam disclosed in Pope. It is our opinion, however, that most of the appealed claims do not sufficiently and definitely define over the concealed seams formerly employed with baseball covers. We regard the intergeared arrangement of the edges as an essential part of appellant's construction as well as the differences which distinguish over the seam of Pope." (Italics ours.)

Claim 18, hereinbefore quoted, omits the following language contained in the claims allowed by the Board of Appeals: "Lobes of connective material between the perforations fitting into the perforations in the contiguous edge of the adjacent segment," and includes the feature that the free edge of the folded back portion is "nicked in staggered relation to said perforations to prevent buckling of the edge of the blank." As we understand it, that claim was rejected by the board on the patent to Martin, in view of the patents to Fox and Melot. The patent to Martin does disclose the idea of folding back the marginal edges and serrating them. It will be observed, however, that appellant has provided serrations in *staggered relation to the perforations preformed for receiving the lace.* That feature was not disclosed by any of the references, nor are we able to agree that it would be obvious to one skilled in the art.

Claim 22 includes the element of anchoring the lace to the core of the ball. We agree with the tribunals below that this feature does not involve invention.

Claims 35, 36, and 37 are three of the

method claims. Claims 35 and 36 define the method of making the article defined in claim 26, which claim was allowed by the Board of Appeals. We find nothing in the references which suggests, either separately or in combination, the method defined by claims 35 and 36. Claim 37 includes the feature, "nicking the marginal edge" of the folded back portion of the segments. It does not include, however, as does claim 18, nicking the edge in staggered relation to the preformed perforations. We are of opinion, therefore, that in view of the disclosure contained in the patent to Martin, claim 37 includes nothing of a patentable nature, not covered by claims 35 and 36.

We deem it unnecessary to discuss the other appealed claims, except to say that from a careful consideration of the issues, and the arguments of counsel, we conclude that claims 18, 35, and 36, together with those allowed by the Board of Appeals, define the patentable subject-matter disclosed by appellant.

For the reasons herein stated, the decision of the Board of Appeals is modified, being reversed so far as it rejected claims 18, 35, and 36, and in all other respects affirmed.